SOCIETY FOR THE RELIEF OF DESTITUTE ORPHAN BOYS *v.* THE CITIES OF NEW ORLEANS AND BALTIMORE.

*John McDonogh*, by his will, instituted as his universal heirs the city of New Orleans and the city of Baltimore; he gave as an annuity to the *Society for the Relief of Destitute Orphan Boys*, one eighth part of the nett yearly revenues of the rents of the whole of his estate, until $400,000 was realized; the said one-eighth part of the revenues to be set apart yearly or half yearly by the Commissioners and Agents of the general estate, (for whose appointment the will provided,) and deposited in some one or more of the banks of New Orleans until the same should amount to $400,000. The will provided that the said amount should be invested in the purchase of real estate, from which a perpetual revenue from the rents of said estate should be drawn for the support of the Institution; that the Directors of the said society, assisted by the Mayor and Aldermen of the city of New Orleans should make the investments, and that the Mayor and Aldermen should approve of the purchases of real estate and become parties to the deeds by which the property should be acquired. *Held:* That the pendency of a suit between the cities for a partition of the succession, was no bar to an action for such instalments of the annuity as had fallen due; that the mode of investment was a matter of mere form which could not operate to annul or defeat the bequest; that it was not in the power of the testator to compel the city, through its Mayor and Aldermen, to become a party to the purchases in real estate in which it was to have no interest, it being the intention of the testator that the *Society for the Relief of Destitute Orphan Boys* should be the recipient of the bounty; that the liability of the defendants to discharge the legacy was not affected by the control over the estate given in the will to the Commissioners and Agents whose appointment was directed; that it was contrary to public law and policy that the simple tenures by which alone our laws permit property to be held, should be so complicated; and that such illegal modes, conditions and charges imposed by the will are to be disregarded.

APPEAL from the Sixth District Court of New Orleans, *Cotton*, J. *Duncan & McConnell*, for plaintiffs and appellees. *R. Hunt* and *J. J. Michel*, for city of New Orleans. *Eustis* and *Roselius*, for city of Baltimore.

SPOFFORD, J.   This is a new controversy growing out of the will of the late
*John McDonogh.*  For a copy of the will and a history of the litigation con-
cerning it hitherto, we refer to the case of *The State of Louisiana* v. *The Exe-
cutors of John McDonogh*, 8 An., 174, and the case of *The Executors of John
McDonogh et al.* v. *Murdoch et al.*, 15 Howard, 367.

In those cases, it was finally adjudged that the cities of New Orleans and
Baltimore were the universal testamentary heirs of *John McDonogh.*

In instituting these cities his heirs, the testator declared that he bequeathed
his property to them "subject to the payment of the several annuities or sums
of money hereinafter directed and set forth, which said annuities or sums of
money are to be paid by the devisees of this my general estate, out of the rents
of said estate."

The present demand is for the third in order of these annuities which the
testator left to the plaintiff in the following language:

"Thirdly.  I give and bequeath to the *Society for the Relief of Destitute
Orphan Boys*, of the city of New Orleans, in the State of Louisiana, (of which
institution *Beverly Chew* was President on the 28th day of April last, 1838,)
for the express and sole purpose (and of no other) of being invested in the
purchase of real estate, say lots of ground and houses situated in the city of
New Orleans and its suburbs, from which a perpetual revenue from the rents
of said real estate may be drawn for the support of said institution, an *annuity*
of the one-eighth part (or twelve and a half per cent.) of the nett yearly reve-
nue of rents of the whole of the general estate, as herein before willed and be-
queathed to the Mayors, Aldermen and inhabitants of the cities of New Orleans,
in the State of Louisiana, and of Baltimore, in the State of Maryland, which
annuity of the one-eighth part of the nett revenues of rents, as above stated,
shall be set apart yearly or half yearly by the Commissioners and Agents of
the general estate, (to be appointed as hereinafter set forth,) and deposited in
some one or more of the banks of the city of New Orleans (which pay interest
on money deposited with them) until such time as said annuity shall amount
to the sum of *four hundred thousand dollars*, (exclusive of any interest which
may have accrued on it,) when it shall cease and be no longer paid.  And, as
the said fund of four hundred thousand dollars accumulates in bank, the Direc-
tors of the said *Society for the Relief of Destitute Orphan Boys*, assisted by
the Mayor and Aldermen of the city of New Orleans, who (the said Mayor and
Aldermen) shall approve of the purchases of real estate and become parties to the
deeds by which it is acquired, *may*, from time to time, (as good purchases offer,)
invest it in purchases of real estate, (as aforestated,) lots and houses, and lots
of ground lying within the city of New Orleans and its suburbs, yielding rents
or likely to yield rents and to increase greatly in value, which real estate, once
acquired, shall never thereafter be alienated or sold by said institution, but
shall forever be retained and held by it, and remain its property.  The title
deeds of purchase, by which said institution shall acquire said real estate, shall
set forth that it is made from funds of this bequest, and that said real estate
cannot be sold or alienated by said *Society for the Relief of Destitute Orphan
Boys.*  The funds, (when accumulated,) as wanted for the payment of the real
estate when purchased, (but for no other purpose,) shall be drawn from bank
by the Commissioners and Agents of the general estate, and paid over to the
Directors of said *Society for the Relief of Destitute Orphan Boys*, and the
Mayor and Aldermen of the city of New Orleans.  I recommend to the Direc-

tors of the *Society for the Relief of Destitute Orphan Boys* to keep such houses as may be purchased or built with the funds from this bequest regularly insured against all risk by fire, by which means, in case of accident, they would have the means to reconstruct them."

The prayer of the petition is for an absolute judgment against the cities *in solido* for the sum of four hundred thousand dollars, with interest from the testator's death; or if that cannot be allowed, for a judgment for said sum and interest, to be paid in manner and form as prescribed in the will, and that it be decreed that the sum of seventy thousand dollars is now due as one-eighth part of the revenues hitherto accrued; there is also a prayer that the money arising from the judgment asked for may be ordered to be paid into bank, that the directions of the testator might be carried into effect in exact terms; and the petition closes with a prayer for general relief by such orders and decrees as may comport with law and equity and secure the rights of the plaintiff under the will.

To these somewhat confused demands, the cities filed separate answers. The city of New Orleans denied the plaintiff's capacity, and after pleading the general issue, averred that, by the terms of the will under which alone the plaintiff has any claim, the annuity demanded was to be set aside by the Commissioners and Agents of the general estate until it should amount to four hundred thousand dollars, and that no portion of it was to be paid over to the Directors of the *Society for Orphan Boys* until then, but that it was to remain under the exclusive control and management of the Agents and Commissioners, and that the plaintiff could not ask that any of the conditions annexed to the legacy should be disregarded or modified; that the respondent did not have under its control any part of said annuity, and could not, under the will, take it from the possession and control of the said Commissioners and Agents; finally, this city denied its solidary liability.

The city of Baltimore, after a general denial, except as to the alleged provisions of the will, pleaded that the action could not be maintained on the face of the proceedings, and that a suit between the two defendants for a partition of the property of the succession, had been instituted, under a law of the State, in the Fifth District Court of New Orleans and transferred to the Circuit Court of the United States for the 'Eastern District of Louisiana, the pendency of which suit was a sufficient reason why the present action could not be maintained.

A trial having been had under these pleadings, the District Judge gave a decree in favor of the plaintiff for the sum of four hundred thousand dollars, with the qualification that, until the further order of the court, the execution of this judgment should be confined to the mode pointed out in the will, to wit: by the application of one-eighth part of the nett yearly revenue or rents of the general estate of *John McDonogh* to be set apart yearly by the defendants, through their Agents or Commissioners, *or such other department of administration* as they may, from time to time, confide the administration of said property to; the same to be deposited in some regular chartered bank in the city of New Orleans, which will pay an interest on deposits, if any such there be, and if none, then in some duly incorporated bank, until such time as the whole sum should amount to $400,000; it was further adjudged that, as the eighth part of the yearly revenues which had been received by the defendants up to the 30th June, 1856, was found, under the evidence, to amount to the sum of

$12,534 09⅝, the defendants should forthwith deposit said sum in bank as directed, to be withdrawn in the manner prescribed by the testator; it was further ordered, that if the defendants should divert any part of the said estate from the uses to which it was destined by the will by partition between themselves, or otherwise destroy said estate, or so administer the same that it could not be ascertained what the nett yearly revenues were, that, in such case, the plaintiff should immediately have execution for the sum of $400,000, or such part thereof as might be due thereon.

The defendants have appealed. The plaintiffs, joining issue on the appeal, have prayed that the judgment be amended in their favor, first, by making it absolute and executory for $400,000 and interest as prayed for; or, secondly, by ordering the defendants to deposit immediately in bank the sum of $75,000.

The plaintiff's demand for $400,000, to be levied immediately by execution out of the property of the universal legatees, is not in accordance with the testator's will.

The defendants' refusal to do anything towards carrying into effect the charitable bequest in favor of the plaintiff, because some portions of the testator's scheme for executing the charity are impracticable, is also repugnant to the testator's intention as well as to protestations made by the cities while their own claims under the will were in jeopardy.

The testator has not bequeathed the sum of four hundred thousand dollars absolutely to the plaintiff. All he ever intended to give the society was an annuity, not of any fixed sum, but which should fluctuate with the profits of the estate left to his universal heirs, under a charge to pay the annuity out of such profits. It may happen that the eighth part of the yearly revenues will never reach the sum of $400,000 ; if they should, the annuity is to cease when that amount shall have been paid over. The estate left to the cities may perish or become fruitless before that amount can be realized. If so, the charge upon the cities in favor of the plaintiff will also perish. There being no fixed and liquidated debt due by the cities to the *Society for the Relief of Orphan Boys*, except so far as the past revenues are concerned, which alone are susceptible of ascertainment, it would be idle for us to endeavor to pierce the future and to regulate the rights of the parties hereafter. Those rights will depend upon facts which time alone can develop. There may be various causes which will operate eventually to defeat the annuity.

All that portion of the judgment which prescribes for the future claims of the society, must therefore be reversed ; and our attention will be restricted to a consideration of this question : what legal claim has the plaintiff to a present judgment against the cities, predicated upon past facts which are in evidence before us ?

The utmost limit of this claim is the one-eighth of the annual revenues accrued up to the time the evidence was closed in the court below. That sum, ending with the 30th June, 1856, was estimated, upon the report of an auditor, at $12,534 09⅝, and we are not satisfied that there was manifest error in the calculation. We are the less disposed to question its correctness, as it was the duty of the defendants so to have kept their accounts as to disclose the true state of the revenue. If there is any uncertainty, it is attributable to them, and they should not profit by their own neglect.

The capacity of the plaintiff to take a bequest is undeniable, and we do not understand that point to have been controverted in this court. The *Society for the Relief of Destitute Orphan Boys* existed as a legal corporation at the time of the opening of the succession. See Acts 1825, p. 92; do. 1837, p. 6.

The pendency of a suit between the two cities for a partition of the succession, is no bar to an action for such instalments of the annuity bequeathed to the plaintiff as have fallen due. As our inquiries are limited to this branch of the plaintiff's demand, we need not speculate upon the consequences of a partition, should it be decreed, nor determine whether the cities will still be bound to pay *pro rata* out of the revenues of their respective shares of the property after a partition, without regard to the transmutations of form which the property may undergo.

All the other defences pleaded may be considered under our general question: is the bequest to the plaintiff such a one as the defendants may be compelled by a decree of the court to execute with regard to such instalments of the annuity as have fallen due?

We have no hesitation in answering this question affirmatively.

A comparison of all the parts of the will, touching this bequest, will show that the testator intended the *Society for the Relief of Destitute Orphan Boys* to be the sole recipient of this portion of his bounty. The legacy is made directly to that institution for the purpose of enabling it to invest the money in real estate for the benefit of the institution. The society was forbidden to alienate the lands acquired by the fund proceeding from the bequest, a prohibition entirely unmeaning if the testator did not intend the property thus acquired to belong exclusively to the society. Indeed, he expressly declared that the real estate so acquired should forever be retained and held by the institution and remain its property. The direction, therefore, that the Mayor and Aldermen of the city of New Orleans should assist in making the investments, approve the purchases, and become parties to the title deeds, was a matter of mere form, not intended to clothe the city with a beneficial interest in any portion of this bequest.

The inquiry then arises, whether this provision of the will, respecting the mode of investment, can operate to annul or defeat the bequest? If it be regarded as a mere recommendation to the city to lend its advice to the society in investing the funds, it is plain that no such result could follow. If, on the other hand, it be regarded as mandatory, and as imposing a condition, charge or mode upon the testamentary disposition in favor of the society, we are equally clear that it cannot operate to defeat the legacy. It was not in the power of the testator to compel the city, through its Mayor and Aldermen, to become a party to purchases in real estate in which it was to have no interest. The condition, charge or mode was therefore contrary to law and is to be reputed as not written. C. C., 1506. The refusal of the city hitherto to take any steps toward the fulfilment of the testator's wishes in this regard, shows that a voluntary compliance therewith is not intended.

In the vain hope of erecting his succession into a juridical person and endowing it with immortality, the testator sought to remove it from the direct control of his instituted heirs, by requiring the city of New Orleans to elect annually three Commissioners and the city of Baltimore three Agents, to whom he gave the seizin of his real estate, and who were to have the sole management of the property, collect the rents, pay the annuities, &c. The cities, accordingly, in

defending this suit, seem to disclaim the right to depart in any particular from the injunctions of the testator in this respect, and to intimate that they are not responsible for the acts of these Commissioners and Agents, and have no powers independent of them. This line of defence is inconsistent with the course of reasoning by which alone the cities were able to succeed in maintaining their title as testamentary heirs against the heirs at law and the alternate legatees, the States of Louisiana and Maryland. It was an idle conceit of the testator that he could thus split up the title to his property, forever separate the seizin and the ownership, and constitute a perpetual Board of Commissioners and Agents, deriving their powers from his sovereign will, to keep watch over the cities whom he made his heirs.

It was contrary to law and to public policy thus to fetter the dominion of the cities over property which has been adjudged to be theirs. It was beyond the power of the deceased so to complicate the simple tenures by which alone our laws permit property to be held. No man's will is above the law.

The cities have followed the recommendation of the testator so far as to appoint Commissioners and Agents, and, in so doing, we do not intend to say they have violated any law. But it was their voluntary act, and it does not release them from the obligation to pay the lawful annuities out of the revenues of property which they received and hold as absolute owners, *subject only to the payment of the annuities*. Those Commissioners and Agents derive all their powers solely from the cities which appointed them, and not from the testator's will. All those portions of the will which might be construed as making it compulsory upon the universal legatees to appoint such agents, and all those provisions which purport to give the agents seizin, or to confer upon them any powers emanating from the testator's volition, are as if they were never written ; because such provisions defy the law, they are annihilated by the law.

In adjudicating upon this case, therefore, we leave out of view the Agents whom the cities have seen fit to appoint, the principals themselves being parties before us.

The cities then cannot escape the plaintiff's demand, by saying it is the duty of the Commissioners and Agents to deposit the moneys in bank ; for, if it is, it is no less the duty of the cities to make them do so.

But the money was only to be deposited in bank until such time as the *Society for the Relief of Orphans* should want it for investment, not, as erroneously suggested in one of the answers, until the full sum of $400,000 should be realized from this portion of the revenues. We think the intention was that the funds should be demandable by the society as often as once a year, if the Directors should see fit to make investments as often as that. We infer from the present petition that they now wish to invest what has accrued out of the revenues, towards the payment of their annuity ; and, disregarding all the illegal modes, charges and conditions to which we have adverted, we think the plaintiff is entitled to an absolute judgment against the defendants for the sum of $12,534 09⅝, as constituting the eighth part of the revenues of the *McDonogh* estate up to the 30th June, 1856, and that in all other respects the plaintiff's demand should be dismissed.

We have not deemed it necessary to enter upon the enquiry, whether this bequest of an annuity may be considered as an usufruct *sub modo* under the Article 602 of the Civil Code. If it be, it is a very peculiar usufruct, unaccompanied by any right of possession in the usufructuary as to the real estate

ORPHAN SOCIETY
*v.*
NEW ORLEANS.

burdened with it, and therefore not subjected to the rules of usufruct in general. It would be premature to decide now whether the annuity will cease at the expiration of thirty years by reason of the rule laid down in Article 607 of the Civil Code.

It is, therefore, ordered that the judgment of the District Court be avoided and reversed; and, proceeding to render such judgment as, in our opinion, should have been pronounced below, it is ordered, adjudged and decreed, that the plaintiff, the *Society for the Relief of Destitute Orphan Boys*, do have and recover of the defendants, the cities of New Orleans and Baltimore, the sum of twelve thousand five hundred and thirty-four dollars and nine and five-eighths cents, the same being the amount of the annuity bequeathed to the plaintiff by the will of the late *John McDonogh*, estimated to have fallen due up to the 30th June, 1856; and it is further ordered and adjudged, that all other portions of the plaintiff's demand be dismissed as in case of non-suit, and that the costs of the District Court be borne by the defendants and appellants, and the costs of this appeal by the plaintiff and appellee.