56 So.2d 280 (1952)
ORLEANS PARISH SCHOOL BOARD
v.
CITY OF NEW ORLEANS.
No. 19875.
Court of Appeal of Louisiana, Orleans.
January 7, 1952.
*281 S. Roccaforte, New Orleans, for appellee.
Henry B. Curtis and Grady C. Durham, New Orleans, for appellant.
REGAN, Judge.
This is an appeal by the defendant, City of New Orleans, from a judgment ordering it to transfer to plaintiff, Orleans Parish School Board, one hundred and seventynine parcels of improved and unimproved property dedicated exclusively to school purposes, title to which is presently registered in the name of the City of New Orleans.
During the course of the regular session of the Louisiana Legislature of 1948, the members thereof passed a joint resolution designated as Act No. 535, which was subsequently ratified by the electorate and thence adopted as an amendment to Section 12 of Article IV of the Constitution of Louisiana relative to "the funds, credit, property or things of value of the State, or of any political corporation thereof". The amending provision subjected to this attack reads as follows:"And provided, further, that the City of New Orleans, through its mayor, is hereby authorized and directed to transfer to the Orleans Parish School Board title to any and all school property, excepting all property of the Isaac Delgado Central Trades School, now or hereafter standing in the name of the city and dedicated exclusively to school purposes."
In pursuance of this amendment, plaintiff requested defendant to comply with the provisions thereof. Defendant declined to comply therewith until such time as the constitutionality of the amendment had been judicially determined. Hence plaintiff instituted this "friendly" action of mandamus to facilitate and expedite the execution of the transfer in conformity with the amendment to the constitution.
The original and supplemental petitions addressed to the Court, a qua, by the plaintiff herein, excluded all of the property of the Isaac Delgado Central Trades School and all property acquired by the City of New Orleans for school purposes pursuant to and by virtue of the existence of any trust. Defendant's original and supplemental answers admit all of the pertinent allegations of the plaintiff's original and supplemental petitions, but, in the final *282 analysis, simply deny that plaintiff is entitled to the remedy afforded by the writ of mandamus.
This matter was tried in its entirety on the pleadings, and the alternative writ of mandamus issued herein was made peremptory by the judge, a quo.
Title to the property, according to the Supreme Court, which transferred the case to us, is not in dispute, and, therefore, we are relegated to the only question which is now posed for our consideration by virtue of the foregoing pleadings, and that is whether plaintiff, the Orleans Parish School Board, has a right to compel the defendant, City of New Orleans, by mandamus proceedings, to transfer certain improved and unimproved properties, dedicated exclusively to school purposes to the plaintiff, in conformity with the provisions of Article IV, Section 12 of the Constitution of Louisiana as amended in 1948.
Defendant, City of New Orleans, opposes the transfer of the properties and maintains that (a) "mandamus is not a proper remedy where the act to be performed would be illegal and impossible of performance"; (b) "Act 535 of 1948, which purports to amend Section 12, Article IV of the Constitution of Louisiana covers a multiplicity of subjects and is unconstitutional"; (c) "The amendment deprives the City of New Orleans of property without due process of law in violation of the United States Constitution"; (d) "the amendment is not self-executing and requires additional legislation to make it operative."
In support of its contention designated hereinabove as (a) defendant argues that, in view of the fact that the amendment contained the phrase "authorized and directed" it was not a mandate issued to the Mayor to transfer the properties; that the Legislature was merely permitting the Mayor to transfer the school properties and was not making that conveyance mandatory. A fortiori, there exists by virtue of the words used in drafting the amendment, that element of discretion which would make mandamus an improper remedy.
We are of the opinion that the very terminology of the amendment "that the City of New Orleans, through its mayor, is hereby authorized and directed to transfer" is a mandate to the City of New Orleans to transfer to the Orleans Parish School Board, title to any and all school property "excepting all property of the Isaac Delgado Central Trades School, now or hereafter standing in the name of the city and dedicated exclusively to school purposes."
It is obvious that the Legislature did not intend to devolve upon the Mayor of the City of New Orleans a mere exercise of his discretion, but to impose a positive and absolute obligation.
It may not be amiss to note in this instance, because of the elaborate alternative contentions of respective counsel as to the ramifications of the phrase "authorized and directed" that words are intermediary between thought and things. We express ourselves not merely through words, which are only signs, but through what they signifythrough things. Words per se are colorless and sometimes meaningless; but the thing that a word stands for has a meaning of its own (such as "directed") and usually a meaning charged with associations of ideas (such as "command") and most often this associative meaning is the primary and important one in its use.
Defendant, in support of its adverse contention designated hereinabove as (b) relies principally on the case of Graham v. Jones, 198 La. 507, 3 So.2d 761, as authority for the fact that Act 535 of 1948 subsequently adopted as an amendment to Section 12 of Article IV of the Constitution covered a multiplicity of subjects and in addition thereto that the submission of the amendment to the electorate embracing a plurality of objects violated Section 1 of Article XXI of the Constitution which provides that "when more than one amendment shall be submitted at the same election, they shall be so submitted as to enable the electors to vote on each amendment separately."
In the Graham case [198 La. 507, 3 So.2d 777] the Court skillfully and microscopically analyzed the provisions of Act No. *283 384 of 1940, colloquially known as the "reorganization act", and stated "that the act embodies a plurality of objects and purposes." That "it affects six articles of the Constitution by repealing twenty sections, amending and rewriting eight sections, and adding seventeen new sections." That the text thereof embraced proposed amendments and not merely one proposed amendment to the Constitution. Furthermore, that "the twenty articles which the legislative act proposes to repeal are referred to merely by numbers, no indication whatever being given as to what the articles cover. Reference to the Constitution itself discloses that three of these sections are in Article III governing the Legislative Department; five of the sections are in Article VI covering Administrative Offices and Boards; one of the sections is Article VI-A relating to Gasoline Taxes and the Distribution of the Proceeds; and ten sections are in and constitute the whole of Article XVI-A relating to the reparation claims connected with the Caernarvon Levee Break in St. Bernard Parish; four of the proposed new sections are in Article III, the Legislative Department; nine are in Article V, relating to the Executive Department; and four are in Article VI-A. Of the rewritten sections, three are in Article V; three in Article VI, one in Article VI-A and one is in Article X relating to Revenue and Taxation."
In the Graham case the constitutional amendment consisted of several separate and distinct amendments. The amendment now involving our consideration is but a single amendment which amends only one section of one article of the Constitution, namely, Section 12, Article IV, and there is but one modification, the transfer of school property from the City of New Orleans to the Orleans Parish School Board. The form in which this constitutional amendment was drafted is the same form in which all constitutional amendments are drafted; that is, the whole section was reproduced as amended.
We are of the opinion that the constitutional amendment and its joint resolution, Act No. 535 of 1948, does not violate the provisions of Section 1 of Article XXI of the Constitution.
Defendant further insists that the aforesaid Act No. 535 of 1948 and the amendment to Section 12 do not make reference to any other provisions of the Constitution, although the amendment is clearly amendatory of several other sections thereof, namely, Section 16 of Article XII, Section 11 of Article XII and Section 24.14 of Article XIV. In our opinion there is no merit to this contention. The act and amendment are not repugnant to nor specifically amendatory of the aforesaid articles. The fact that they relate to matters concerning the City and the School Board does not invalidate the amendment, otherwise an endeavor to amend the constitution would require the use of absurd intellectual gymnastics.
Defendant, in support of its adverse contention designated hereinabove as (c) insists that "there is no question but what the City of New Orleans, being a municipal corporation and, therefore, a creature of the State Legislature, may have its charter amended, changed, or even abolished, except as protected by the Constitution of the State or of the United States. Trustees of Dartmouth College v. Woodward Dartmouth College Case, 4 Wheat. 518, 4 L.Ed. 629. But, with respect to its private or proprietary rights and interests, it may be entitled to the constitutional protection afforded by the Fifth and Fourteenth Amendments to the Constitution of the United States." In other words, the amendment deprives the City of New Orleans of property without due process of law in violation of the Constitution of the United States.
In State ex rel. Kemp v. City of Baton Rouge, 215 La. 315, 40 So.2d 477, 483, the Supreme Court enunciated a rule relative to the power of the State over its political sub-divisions in the following words: "The settled doctrines of the courts to be acted upon whenever applicable, are that the State, at its pleasure, may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite *284 the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All of this may be done conditionally or unconditionally with or without the consent of the inhabitants or even over their protest. The State in all respects is supreme and its legislative body, conforming its action to the State Constitution, may do as it will, unrestrained by any provision of the Constitution of the United States. Although the citizens and property holders may by such changes suffer inconvenience and their property may be lessened in value by the burden of increased taxes, or for any other reason, they have no right by contract or otherwise, in the unaltered or continued existence of the corporation or its powers, and there is nothing in the Federal Constitution which protects them from these injurious consequences. The power is in the State and those who legislate for the State are alone responsible for any unjust or oppressive exercise of it."
It cannot now be seriously disputed that the operation and administration of the public schools of the State of Louisiana are for the benefit of the public welfare in general and, therefore, subject to Legislative control. As long ago as 1845, the several constitutions of this State provided that "the legislature shall establish free public schools throughout the State, and shall provide means for their support by taxation on property, or otherwise." This provision is contained in Article 134 of the Constitution of 1845. The administration of public schools is not of prime concern of the City of New Orleans, but, is the principal function of the Orleans Parish School Board, a political subdivision of the State, which has been invested with the power, control and administration of public education in this municipality. It, therefore, may be enunciated as a corollary that school properties are possessed solely for the public use and welfare.
McQuillan on Municipal Corporations, Secs. 46.02, Vol. 16 of the 3rd Edition, states: "* * * Generally, however, the common or free school system of education in this country has been organized, fostered by constitutional provisions and legislative enactments as a primary and distinct function of the state and held under state control. * * * It is not a part of the local self-government inherent in the town, township, or incorporated community, except insofar as the Legislature may choose to make it such."
Section 4.20 of this same text states: "* * * Municipalities are protected by the due process clause against legislative alienation of their property and the transfer of it to a private person, but with this exception on the due process clause in the constitutions is of little importance so far as legislative control of municipal corporations is concerned."
An analagous condition exists in the City of New Orleans with reference to its public schools. Title to the school properties herein sought to be transferred is possessed by the City of New Orleans. Yet, the administration of the public schools is exercised by the Orleans Parish School Board. The constitutional amendment in ordering the transfer of the properties, which are the subject of this litigation, to the Orleans Parish School Board, is not diverting the use of the property from its original objective, it simply transfers the ownership thereof to the Orleans Parish School Board, which the people think, as evidenced by this constitutional amendment, is the proper state agency to possess these properties and it is not within the province of the judiciary to attempt to substitute its wisdom for that of the people, who are, in the final analysis, under our established system of government, supreme.
Further pursuing the foregoing subject, McQuillan on Municipal Corporations, Sec. 4, 133, Vol. 2, states: "It is generally held that transferring property and authority by act of the legislature from one class of public officers to another where the property is still devoted to its original purpose, does not invade the vested rights of the city. A statute authorizing the transfer of the use and possession of a municipal airport to an airport commission created by the Legislature, without compensation to the City, has been held to not violate the due process clause of the Federal Constitution." *285 Cited are Monaghan v. Armatage, 218 Minn. 108, 15 N.W.2d 241, and City of Trenton v. State of New Jersey, 262 U.S. 182, 43 S.Ct. 534, 67 L.Ed. 937.
It is our considered opinion that in view of the established jurisprudence, as we interpret it, no rights, private or proprietary of the City of New Orleans are invaded or extracted from it by giving effect to the amendment, Section 12, Article IV of the Constitution of Louisiana.
We have observed that counsel for defendant urged in their supplemental answer that the constitutional amendment "would deprive the City of New Orleans of property held in trust", but has not either in brief or in oral argument before this Court endeavored to substantiate this allegation. The various properties involved herein were not acquired pursuant to or by virtue of the existence of any trust. We must, therefore, assume that the defendant has abandoned this adverse contention and we shall not discuss it.
Defendant, in support of its adverse contention designated hereinabove as (d), insists that the amendment is not self-executing and required additional legislation to make it operative, and cites in support of this theorem State ex rel. Noe v. Knop, La.App., 190 So. 135 (Court of Appeal-Orleans); Angelle v. State, 212 La. 1069, 34 So.2d 321, 2 A.L.R.2d 666; Coguenham v. Drainage District, 130 La. 323, 57 So. 989; and 38 Words & Phrases, for all other definitions of "Self-Executing."
It is also our opinion that there is no merit to this contention in view of the existing jurisprudence and, by the same token, the very terminology of the amendment leads only to the conclusion that it is self-operative, complete and sufficient unto itself. It "authorized and directs" the City of New Orleans, through its Mayor, to transfer to the Orleans Parish School Board, title to any and all property, excepting all property of the Isaac Delgado Central Trades School. No additional enabling legislation is required to give effect to the amendment. In State v. Knop, supra, [190 So. 135] we said: "It must be borne in mind, also, that the modern doctrine favors the presumption that constitutional provisions were intended to be self-operating. * * *"
In State ex rel. Curtis v. Ross, 144 La. 898, 81 So. 386, 387, the Supreme Court said: "* * * the presumption now is that all provisions of the Constitution are self-executing."
The Angelle and Coguenham cases, supra, also hold that constitutional amendments are self-executing and support the legal conclusions of the plaintiff herein.
We are of the opinion that the people have spoken through the medium of this constitutional amendment; that the defendant has failed to overcome the presumption in favor of the constitutionality of the joint resolution, Act No. 535 of 1948 and the constitutional amendment to Section 12 of Article IV of the Constitution; and that the overwhelming weight of the jurisprudence sustains the constitutionality of the amendment.
For the reasons assigned the judgment appealed from is affirmed.
Judgment affirmed.