90 So.2d 683 (1956)
ORLEANS PARISH SCHOOL BOARD
v.
CITY OF NEW ORLEANS.
No. 20589.
Court of Appeal of Louisiana, Orleans.
November 12, 1956.
Rehearing Denied December 10, 1956.
*684 Samuel I. Rosenberg, New Orleans, for Orleans Parish School Board, plaintiff-appellee.
Henry B. Curtis, City Atty., Grady C. Durham, William Boizelle, Asst. City Attys., New Orleans, for City of New Orleans, defendant-appellant.
JANVIER, Judge.
The Orleans Parish School Board, a political subdivision of the State of Louisiana, seeks, by mandamus, to compel the City of New Orleans to transfer to it a square of ground in the City of New Orleans described as follows:
"A certain square of ground designated on a plan drawn by M. Harrison, on 23rd March 1844, and deposited in this City, as Square T23, bounded by Hampson, Second (now Maple) and Short Streets and Carrollton Avenue, and measures two hundred and seventy five (275) feet on each of said streets and containing twenty lots, numbered from One to Twenty, inclusive."
The School Board also prays that the city be enjoined from interfering with the Board in the exercise of its rights in connection with the said property or from selling or otherwise disposing of it.
From a judgment ordering the city to transfer the property to the Board and enjoining it from otherwise disposing of the property or interfering with the use thereof by the Board, the city has appealed.
During the year 1948 there was adopted by the State Legislature a joint resolution, Act 535 of 1948, which was ratified by the people of the State and thus became an amendment to the Constitution and which reads in part as follows:
"And provided, further, that the city of New Orleans, through its mayor, is hereby authorized and directed to transfer to the Orleans Parish School Board title to any and all school property, excepting all property of the Isaac Delgado Central Trades School, now or hereafter standing in the name of the city and dedicated exclusively to school purposes." LSA-Const. art. 4, § 12.
Pursuant to this amendment the School Board sought by an earlier mandamus suit to compel the city to transfer to it 179 parcels of improved and unimproved property standing in the name of the city and devoted exclusively to school purposes. On various grounds the city resisted this effort and, from a judgment ordering the transfer, appealed to this court. We affirmed the judgment. Orleans Parish School Board v. *685 City of New Orleans, La.App., 56 So.2d 280, 285.
In that suit the Board did not include other properties devoted to school purposes, among them the square which is here involved and which property on the public records stands in the name of the "Board of Commissioners of the John McDonogh School Fund." This square of ground had come into the possession of the city as a result of the legacy left to the city by the late John McDonogh. This property, with those others devoted to school purposes and which were not contemplated in the first mandamus suit, was intentionally omitted therefrom evidently because the Board felt that there might possibly be a distinction between those properties used for school purposes which had not been obtained through the McDonogh legacy and those which had come to it through that source. It was evidently felt that there was a possibility that it might be found that those properties were held "in trust" and that therefore possibly the city could not be compelled to transfer them because of this trust status. At any rate, this and other properties were not contemplated by that suit as is conceded and as is made evident by the following statement which appears in the opinion which we then rendered:
"* * * The various properties involved herein were not acquired pursuant to or by virtue of the existence of any trust. * * *"
It is advisable that we set forththough as briefly as possiblethe history of how this property, which stands on the public records in the name of the Board of Commissioners of the John McDonogh School Fund, came into the possession of the city and was transferred by it to the said Board of Commissioners.
The property, nostalgically known as McDonogh No. 23, was acquired in 1853 by the Police Jury of the Parish of Jefferson, the City of Jefferson and the City of Carrollton. By Act 71 of 1874 the City of Carrollton was annexed to and became a part of the City of New Orleans and, as a result, all lands which were theretofore part of the City of Carrollton became part of the City of New Orleans.
By Act 91 of 1884, the City of New Orleans and the Police Jury of the Parish of Jefferson were authorized to partition the property known as "the Courthouse Buildings in the late Town of Carrollton". As a result, on December 22, 1888, title to this property was acquired by the City of New Orleans.
The McDonogh will provided for "Commissioners of the General Estate" with numerous rights, powers and obligations. This property has never stood in the name of those commissioners.
The City of New Orleans had created the Board of Commissioners of the John McDonogh School Fund which, it is conceded, was a different body from the Commissioners of the General Estate as provided for by the McDonogh will, and title to this property was, by notarial act, transferred by the City of New Orleans to this Board of Commissioners of the John McDonogh School Fund.
The question which confronts us, though rather simply stated, is not so easily answered. This is the question: Is the property, this squarewhich came into the possession of the city as a result of the McDonogh legacy, and which, by the city, was placed on the public records in the name of the Board of Commissioners of the John McDonogh School Fund within the contemplation of the constitutional amendment of 1948, and must it therefore be transferred to the Orleans Parish School Board, bearing in mind that the constitutional amendment required that the City of New Orleans transfer to the Orleans Parish School Board title "to any and all school property," etc.
*686 The City of New Orleans points to certain provisions in the McDonogh will under which the legacy left to it was to be applied solely to the education of poor children and was to be administered in accordance with certain detailed instructions which appeared in the will, and counsel say that these provisions clearly constitute the legacy as a trust and that the violation of these provisions or the alienation of the property by it would result in the forfeiture thereof in accordance with the provisions of the will.
Counsel for the School Board, on the other hand, rely on decisions of our State Supreme Court and of the Supreme Court of the United States, and relying especially on a decision rendered in 1853, State of Louisiana v. Executors of McDonogh, 8 La.Ann. 171, say that it was there held that, though there were certain provisions in the will as to the management and destination of the legacy, the legacy was not left in trust but was one for pious uses and that the title to the legacy and consequently to any property derived as a result thereof belonged to the City of New Orleans in fee simple and that this and other similar properties are therefore within the contemplation of the constitutional amendment of 1948.
In the cited case, 8 La.Ann. 171, which seems to have set at rest the question of what kind of title the city acquired as a result of the McDonogh will, the Supreme Court of Louisiana discussed the various conditions which the testator sought to impose upon the legatee cities (Baltimore and New Orleans) and said that none of those conditions conflicted "with the hypothesis of the title being vested in the legatees," that is, the Cities of New Orleans and Baltimore, and the Court also said that ownership of property "Under the Roman Law, and under our system, is that of simple, uniform and absolute dominion," and the Court held that the legatee cities were entitled under the will to that "absolute dominion.".
A little later in another case, Society for Relief of Destitute Orphan Boys v. City of New Orleans, 12 La.Ann. 62, the Court, referring particularly to its earlier decision in 8 La.Ann., said that in that earlier decision it had held that the legatee cities "were universal testamentary heirs" and it found that as such they had full and unencumbered title to the estate and the proceeds thereof. The Supreme Court of the United States recognized the status of the title of the legatees when, in McDonogh's Executors v. Murdoch, 15 How. 367, 56 U.S. 367, 14 L.Ed. 732, it used language which justifies the syllabus which states "That the Cities of Baltimore and New Orleans were legatees under a universal title."
In City of New Orleans v. Commissioners of the Estate of John McDonogh, 12 La.Ann. 240, some of the heirs of McDonogh brought suit to annul the will, the suit being brought against the Commissioners provided for in the McDonogh will. The Supreme Court held that those Commissioners had no title to any of the property of the estate; that they were merely mandatories of the two cities and in effect that the title was in the legatee cities. The Court said:
"The commissioners and agents have no powers independent of the cities whose mandataries they are. They represent nobody but the cities which appointed them, and derive their authority, not from the will of John McDonogh, but from their principals, whose instructions they must obey. Society for Relief of Orphan Boys v. New Orleans and Baltimore, 12 An. 62; Howard & Meyer v. New Orleans and Baltimore, 12 An.
And in at least two other later decisions, the Supreme Court of Louisiana discussed the question of whether the property left by McDonogh or the proceeds thereof constituted trust property, and held that it did not.
*687 In Carrere v. City of New Orleans, 162 La. 981, 111 So. 393, 406, the Supreme Court said:
"The title acquired by the two cities was therefore not in trust, or entailed with any condition, as to its being alienable or subject to private ownership."
And in City of New Orleans v. Salmen Brick & Lumber Co., 135 La. 828, 66 So. 237, 246, which is relied on by the City of New Orleans, the Supreme Court, we think, very plainly said that the cities acquired their interests in the properties and funds which formed the estate as owners and not as trustees. Note the following language:
"It was said that, public education being a function of municipal government, the bequest to the cities was a donation for this worthy purpose, or what is defined in our Code as a gift for pious uses. It was declared that the two cities acquired the property in full ownership, and not as trustees, except to the extent that all property of a municipal corporation is held in trust for the benefit of its citizens."
Counsel for the city rely upon the well recognized principle that such property as is held by a municipality is held by it "In trust." This does not mean that the municipality does not possess full and unencumbered title to such property. It merely means that the property belongs to all the citizens and that the municipality holds it for the benefit of the citizens and to that extent it holds it in trust. This principle does not, to any extent, prevent a municipality from acquiring or disposing of property provided it does so in accordance with such laws as may be applicable.
We direct attention again to the contention of the city which, to some extent, is based on the fact that it has placed this property in the name of the Board of Commissioners of the John McDonogh School Fund and find it interesting to note again that that Board is not the Board which the testator sought to create. He sought to create the "Commissioners of the General Estate." The Board created by the City the Board of Commissioners of the John McDonogh School Fundmerely acts for the city and represents it in the administration of the McDonogh legacy. It has no authority except as the agent of the city and the mere fact that title on the public records may stand in the name of that Board does not mean that such property does not belong in fee simple to the city.
The contention, that the acceptance by the city of the McDonogh legacy under the conditions imposed by the will constituted a contract which cannot be abrogated by statute, is not well founded because of the historic sequence of events which is noted here. In our earlier decision in the first of these cases, Orleans Parish School Board v. City of New Orleans, 56 So.2d at page 284, we said:
"An analogous condition exists in the City of New Orleans with reference to its public schools. Title to the school properties herein sought to be transferred is possessed by the City of New Orleans. Yet, the administration of the public schools is exercised by the Orleans Parish School Board. The constitutional amendment is ordering the transfer of the properties, which are the subject of this litigation, to the Orleans Parish School Board, is not diverting the use of the property from its original objective, it simply transfers the ownership thereof to the Orleans Parish School Board, which the people think, as evidenced by this constitutional amendment, is the proper state agency to possess these properties and is not within the province of the judiciary to attempt to substitute its wisdom for that of the people, who are, in the final analysis, under our established system of government, supreme."
*688 We have not overlooked the fact that in the case particularly relied on by the School Board, State of Louisiana v. Executors of McDonogh, supra, the Court did not discuss or even mention the word "trust" in the sense in which it is used in the argument on behalf of the city. The prohibited substitutionthe fidei commissumif permitted would constitute a kind of ownership unknown to our civil lawa paper title in the name of one but a real ownership held by another. That is the kind of ownership which was discussed in the case referred to, and the Supreme Court merely held that that kind of ownership was not the ownership conveyed by the McDonogh will. The word "trust" as it is used in the argument on behalf of the city means an entirely different thing. It means a full and complete ownership coupled with a moral obligation to use in accordance with the wishes and instructions of the donorthe testator. And, of course, no one will for a moment deny that in that sense the McDonogh will provided for legacies "in trust" to the legatee cities. That kind of trust is the one referred to in the familiar statement often cited but unfortunately often not honored in the observance: "A public office is a public trust." That is the kind of trust which is here involved in the title of the City of New Orleans, and it does not affect the legal title but only the obligation which is imposed by the ownership of titlethe moral obligation to see that the property is devoted to the education of the youth of the area.
There can be no doubt that, under our present school system, the city can itself no longer recognize that moral obligationto devote the McDonogh legacy to the education of the children of the area. That obligation is now placed upon the Orleans Parish School Board. The fee simple title to the property is, as has been shown, recognized by the courts and since the city has such title, it can be compelled by the constitutional amendment to transfer that title to that body which is now obligated to educate the children of the area and which now therefore is, as the city formerly was, obligated to devote the property resulting from the legacy to that purpose.
The judgment appealed from is affirmed.
Affirmed.