Dear Superintendant Lemoine:
On behalf of the Avoyelles Parish School Board ("School Board" or "Board"), you have requested an Attorney General's opinion regarding the free use of public school facilities by non-profit entities and liability insurance requirements for leases on Section 16 trust lands. Your questions are as follows: (1) May the School Board allow a non-profit entity to use a school facility free of charge?, and (2) Must the School Board require a minimum of $100,000 of liability insurance for campsite leases on Section 16 trust lands in Avoyelles Parish? We begin with your first question.
Per our telephone conversation, the school facility at issue is a "freezer locker plant" located on the school grounds of what is currently an elementary/middle school. The facility was designed to teach students to butcher cows and package meat, and houses large freezer lockers, tables and equipment needed to butcher cows. The School Board no longer uses the freezer locker plant for instructional purposes but continues to maintain the facility and allows entities and individuals to use the facility to store frozen food and butcher cows. The Board would like to know if it may allow non-profit entities to use the facility free of charge.
All questions concerning the use of public funds, property and things of value must be examined in light of La.Const. Art. VII, § 14, which provides, in pertinent part, as follows: *Page 2 
 Section 14(A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private . . .
In Board of Directors of the Industrial Development Board of theCity of Gonzales, Louisiana, Inc. v. All Taxpayers, Property Owners,Citizens of the City of Gonzales, et al., 2005-2298, 938 So.2d 11 (La. 9/6/06) (the "Cabela's" case), the Louisiana Supreme Court abandoned its prior analysis in City ofPort Allen. v. Louisiana Mun. Risk Mgmt. Agency, Inc.,439 So.2d 399 (La. 1983), and articulated a new standard of review governing La.Const. Art. VII, § 14(A), stating that La.Const. art. VII, § 14(A) "is violated when public funds or property are gratuitously alienated." Cabela's,938 So.2d at 20.
In light of the Cabela's case, it is the opinion of this office that in order for an expenditure or transfer of public funds to be permissible under Art. VII, Sec. 14(A), the public entity must have the legal authority to make the expenditure and must show: (i) a public purpose for the expenditure or transfer that comports with the governmental purpose for which the public entity has legal authority to pursue; (ii) that the expenditure or transfer, taken as a whole, does not appear to be gratuitous; and (iii) the public entity has a demonstrable, objective, and reasonable expectation of receiving at least equivalent value in exchange for the expenditure or transfer of public funds. The Cabela's
standard places a strong emphasis on the reciprocal obligations between the parties to ensure that there is not a gratuitous donation of public funds
It is not clear what public purpose is being served by allowing non-profit entities to use this facility, but the free use of the freezer locker facility is gratuitous on its face and does not meet the second prong of the Cabela's analysis. The School Board would not be able to demonstrate a reasonable and objective expectation of receiving something of equivalent value, or even any value, in exchange for the expenditure or transfer of public funds. The fact that the entity is non-profit in nature does not alter this determination. Art. VII, § 14(A) prohibits the donation or transfer of public funds to any person, association, or corporation. Thus, it is the opinion of this office that the School Board may not allow a non-profit entity to use the freezer locker facility free of charge, as such use would constitute a donation of public property in violation of Art. VII, § 14(A).
In closing, we note that should the school board determine that the freezer locker plant is surplus and is not necessary for the operation of schools in the district, then the Board may sell, lease, or otherwise dispose of the facility pursuant to R.S.17:87.6(A) and R.S. 41:89, or it may contract for the non-exclusive use of the facility. For a detailed summary of the options for selling, leasing or contracting for the non-exclusive use of the facility, see Attorney General Opinion Nos. 08-0288, 07-0076, 05-0172, 02-0363 and 00-0340. *Page 3 
We turn now to your second question. You have asked whether the School Board must require a minimum of $100,000 of liability insurance for each campsite lease on Section 16 trust lands in Avoyelles Parish. The following background information is based on our phone conversation and a review of the documents provided to our office, which include the minutes of the September, October and November 2008 Board meetings, letters from the Avoyelles Parish District Attorney's Office ("DA's office") and the Fiscal Management section of the School Board's Policy Manual.
At the September 2008 meeting of the Building and Lands Committee (the "Committee"), committee members discussed the Board's policy regarding insurance requirements for campsite leases on school lands, and following its policy, recommended that the Board seek advice from the DA's office.[1] The policy in question provides, in pertinent part, as follows:
 The Board shall require all appropriate leases, as determined by the Board's legal advisor, to include the purchase of appropriate liability insurance by the individual or organization leasing the property, which shall hold the Board free from any liability that may result directly or indirectly from the leased property's usage.
The DA's office recommended that the Board require aminimum of $100,000 of liability insurance for each campsite lease on school lands. A committee member who objected to the DA's recommendation stated that camp owners were not required to maintain $100,000 of liability insurance and questioned the DA's authority to mandate that they do so. He further noted that the Board had recently begun to require camp owners to adhere to stricter guidelines in other areas and asked to be provided a copy of the law requiring such insurance. Clarification was sought from the DA's office.
Between September and November 2008, the DA's office sent the Board three letters providing and clarifying its recommendation. Additionally, ADA James Lee attended the School Board's November meeting to answer questions from Board members. The message consistently communicated to the Board was that the DA's advice was provided in response to a Board resolution requesting the advice; that the advice was a recommendation and not a mandate, and finally, that there were no state statutes mandating liability insurance for camp site leases on Section 16 lands. It appears that some Board members disagreed with the advice received, and thus the Board seeks the opinion of this office. *Page 4 
This office concurs with the DA's determination that there are no state statutes mandating liability insurance for leases on Section 16 lands. We note, however, that the absence of such a statute does not resolve the issue of whether the Board should require such liability insurance. The duties and responsibilities of school boards in the management of school lands are well established in Louisiana law and jurisprudence. The ownership, management and control of property within a school board's district is vested in the district, in the manner of a statutory trustee, for the benefit of public education. Orleans Parish School Board v. City ofNew Orleans, 56 So.2d 280, 284 (La.App.Orleans 1952).
In Ebey v. Avoyelles Parish School Board,861 So. 2d 910, 2003-765 (La.App.3 Cir. 12/17/03), the school board's[2] right to make land management decisions regarding Section 16 trust lands was at issue. The court provided, in pertinent part, as follows:
 We conclude Section 16 lands are held in trust by the State and managed by school boards "in the manner of a statutory trustee" for the benefit of public education. The School Board "shall have the right to administer and use the property for public school purposes," subject to statutory regulations regarding its sale or lease. La.R.S. 41:638; La.R.S. 41:631 et seq. Ebey at 915.
 * * * Under the general principles of trust, a trustee is required to "administer the trust as a prudent person would administer it. In satisfying this standard, the trustee shall exercise reasonable care and skill, considering the purposes, terms, distribution requirements, and other circumstances of the trust." La.R.S. 9:2090(A). Ebey at 915.
The court in Ebey further provided the following:
 As a prudent administrator, the School Board is charged with implementing a plan for the trust lands which may legitimately include a concern for clean air and water, species preservation, family recreational activities, as well as providing consistent income for the support of public education. We recognize Avoyelles Parish is a rural area with hunting and fishing a mainstay of family activities and social gatherings. It is the primary obligation of the School Board, within the dictates of state and federal statutes, to use the land to provide income for schools and preserve the trust asset for future generations of children. Ebey at 920.
To summarize, Louisiana law and jurisprudence provides that Section 16 school lands are held in trust and managed by the School Board in the manner of a statutory trustee *Page 5 
and as a prudent administrator of the trust. The Board's primary obligations are to use the trust lands to provide consistent income for the support of public education and to preserve the trust lands for future generations of children. The School Board's policy manual, in the section titled "Lease of School Lands," mandates that the School Board require liability insurance on all appropriate leases, as determined by the Board's legal advisor. The policy further provides that the amount of insurance must be sufficient to hold the Board free from any liability resulting directly or indirectly from the use of the leased property. As dictated by this policy, the Board sought advice from its attorney regarding insurance requirements for camp site leases, and he recommended that the Board require a minimum of $100,000 of liability insurance for each campsite lease.
Based on the above, it is the opinion of this office that the School Board, acting as a prudent administrator, and considering the increased risk of liability occasioned by campsite leases on trust lands, should require each lease to include liability insurance in an amount sufficient to protect the Board and hold it free from any liability that may result directly or indirectly from the leased premises. The amount recommended by the District Attorney will, at a minimum, meet this requirement.
We trust this adequately addresses your concerns. If you have any further questions, please contact our office.
Yours very truly,
JAMES D. "BUDDY" CALDWELL Attorney General
BY:______________________ DENISE B. FITZGERALD Assistant Attorney General
JDC:DBF:lbw
[1] The primary function of the District Attorney in relation to the Board is to provide professional counsel and representation to the Board and Superintendent. (See Policy Manual of Avoyelles Parish School Board — Board Attorney.)
[2] Avoyelles Parish School Board.